1

2

3

4

5

6

7

8            IN THE UNITED STATES DISTRICT COURT

9           FOR THE EASTERN DISTRICT OF CALIFORNIA

10   BRYAN LESLIE WARN,

11            Plaintiff,                    No. 2:11-cv-2045 KJN

12        vs.

13   CAROLYN W. COLVIN,
     Commissioner of Social Security,
14
              Defendant.              ORDER
15   _____/

16            Plaintiff, who is represented by counsel, seeks judicial review of a final decision

17   of the Commissioner of Social Security ("Commissioner") denying applications for Disability

18   Income Benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI,

19   respectively, of the Social Security Act ("Act").[1]  In his motion for summary judgment, plaintiff

20   contends that the administrative law judge ("ALJ") in this case erred by: (1) improperly assessing

21   the opinions of plaintiff's examining and non-examining doctors; (2) improperly assessing the

22   credibility of plaintiff's testimony; and (3) improperly evaluating the lay testimony of plaintiff's

23   girlfriend.  (Mot. for Summ. J., Dkt. No. 17 at 10-23.)  The Commissioner filed an opposition to

24   _____

25        [1]  This case was referred to the undersigned pursuant to E.D. Cal. L.R. 302(c)(15) and 28
     U.S.C. § 636(c), and both parties voluntarily consented to proceed before a United States
26   Magistrate Judge.  (Dkt. Nos. 6, 9.)

1  plaintiff's motion and a cross-motion for summary judgment.  (Opp'n, Dkt. No. 20).  For the

2  reasons stated below, the court denies plaintiff's motion for summary judgment and grants the

3  Commissioner's cross-motion for summary judgment.

4  I.       BACKGROUND[2]

5           A.       Procedural Background

6                    Plaintiff filed applications for DIB and SSI in October of 2007, alleging in both

7  applications a disability onset date of June 2, 1991.  (Administrative Transcript ("AT") 22.)  The

8  Social Security Administration denied both claims, initially on August 20, 2008, and upon

9  reconsideration on August 21, 2008.  (Id.)  Plaintiff filed a request for a hearing on October 7,

10 2008, and the ALJ conducted a hearing regarding plaintiff's claims on October 27, 2009.  (Id.)

11 Plaintiff, who was represented by counsel, testified at the hearing.  (AT 38-53.)  A vocational

12 expert ("VE") also testified at the hearing.  (AT 53-56.)

13                   In a decision dated January 25, 2010, the ALJ determined that plaintiff was not

14 disabled for purposes of the Act, during the period from June 2, 1991, through the date of the

15 ALJ's decision.[3]  (AT 19-30.)  The ALJ's decision became the final decision of the

16

17        [2]   Because the parties are familiar with the factual background of this case, including
   plaintiff's medical history, the undersigned does not exhaustively relate those facts here.  The
18 facts related to plaintiff's impairments and medical history will be addressed only insofar as they
   are relevant to the issues presented by the parties' respective motions.
19
          Additionally, to the extent the undersigned uses the present tense in referring to or
20 describing plaintiff's alleged conditions or functional abilities, or the ALJ's or Appeals Council's
   characterizations of the same, the undersigned clarifies that such references are to plaintiff's
21 conditions or functional abilities at the time of the ALJ's or Appeals Council's decision, unless
   otherwise indicated.
22
          [3]   Disability Insurance Benefits are paid to disabled persons who have contributed to the
23 Social Security program, 42 U.S.C. §§ 401 et seq.  Supplemental Security Income ("SSI") is paid
   to disabled persons with low income.  42 U.S.C. §§ 1382 et seq.  Under both provisions,
24 disability is defined, in part, as an "inability to engage in any substantial gainful activity" due to
   "a medically determinable physical or mental impairment."  42 U.S.C. §§ 423(d)(1)(a) &
25 1382c(a)(3)(A).  A five-step sequential evaluation governs eligibility for benefits.  See 20 C.F.R.
   §§ 423(d)(1)(a), 416.920 & 416.971-76; Bowen v. Yuckert, 482 U.S. 137, 140-42 (1987).  The
26 following summarizes the sequential evaluation:

1   Commissioner when the Appeals Council denied plaintiff's request for review.  (AT 1-3.)  This

2   action for judicial review ensued.

3        B.    Summary Of The ALJ's Findings

4        The ALJ conducted the required five-step evaluation and concluded that plaintiff

5   was not disabled within the meaning of the Act.  At step one, the ALJ concluded that plaintiff

6   had not engaged in substantial gainful activity since June 2, 1991, the alleged date of onset.  (AT

7   24.)  At step two, the ALJ concluded that plaintiff had the "severe" impairment of "anxiety

8   disorder."  (Id.)  The ALJ also noted that plaintiff had non-severe "medically determinable

9   impairments" of obesity and status-post ankle fracture that did not cause more than minimal

10  limitation in plaintiff's ability to perform basic work activities.  (Id.)  At step three, the ALJ

11  determined that plaintiff's impairment did not meet or medically equal any impairment listed in

12  the applicable regulations.  (Id. at 25-26.)

13       The ALJ further determined that plaintiff has the residual functional capacity

14  ("RFC") to "perform a full range of work at all exertional levels," but that he also had non-

15

16           Step one:  Is the claimant engaging in substantial gainful
        activity?  If so, the claimant is found not disabled.  If not, proceed
        to step two.
17           Step two:  Does the claimant have a "severe" impairment?
        If so, proceed to step three.  If not, then a finding of not disabled is
18      appropriate.
             Step three:  Does the claimant's impairment or combination
19      of impairments meet or equal an impairment listed in 20 C.F.R., Pt.
        404, Subpt. P, App.1?  If so, the claimant is automatically
20      determined disabled.  If not, proceed to step four.
             Step four:  Is the claimant capable of performing his past
21      work?  If so, the claimant is not disabled.  If not, proceed to step
        five.
22           Step five:  Does the claimant have the residual functional
        capacity to perform any other work?  If so, the claimant is not
23      disabled.  If not, the claimant is disabled.

24  Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

25       The claimant bears the burden of proof in the first four steps of the sequential evaluation
    process.  Bowen, 482 U.S. at 146 n.5.  The Commissioner bears the burden if the sequential
26  evaluation process proceeds to step five.  Id.

1  exertional limitations that limits him to performing "work involving simple instructions and

2  having relatively restricted contact with the public." (AT 26.)  In coming to this determination,

3  the ALJ found that although plaintiff's "medically determinable impairments could reasonably be

4  expected to cause some of the alleged symptoms," plaintiff's statements regarding the "intensity,

5  persistence, and limiting effects" of the alleged symptoms were "not credible to the extent that

6  they are inconsistent with the . . . [RFC] assessment." (AT 26.)

7          In connection with his RFC finding, the ALJ considered the opinion of Dr. Patrick

8  Wong, an examining psychiatrist, and gave it "substantial weight." (AT 28.)  The ALJ also

9  considered the opinion of another examining psychiatrist, Dr. Patricia White, and gave "reduced

10  weight" to her opinion." (Id.)  Additionally, the ALJ considered the opinion of Dr. Robert

11  Paxton, a non-examining physician, and gave it "substantial weight." (AT 27.)  Plaintiff

12  provided no opinions from treating physicians.

13          At step four, the ALJ found that plaintiff has no past relevant work. (Id.)  Finally,

14  at step five, the ALJ determined that, given plaintiff's "age, education, work experience, and

15  [RFC]," there were jobs that exist in significant numbers within the national economy that

16  plaintiff could perform. (AT 29.)  Based on the VE's testimony, the ALJ determined that

17  plaintiff could perform unskilled occupations such as hand packer, cleaner, and assembler. (Id.)

18  II.      STANDARDS OF REVIEW

19          The court reviews the Commissioner's decision to determine whether it is: (1) free

20  of legal error, and (2) supported by substantial evidence in the record as a whole. Bruce v.

21  Astrue, 557 F.3d 1113, 1115 (9th Cir. 2009).  This standard of review has been described as

22  "highly deferential." Valentine v. Comm'r of Soc. Sec. Admin., 574 F.3d 685, 690 (9th Cir.

23  2009). "Substantial evidence means more than a mere scintilla but less than a preponderance; it

24  is such relevant evidence as a reasonable mind might accept as adequate to support a

25  conclusion." Bray v. Comm'r of Soc. Sec. Admin., 554 F.3d 1219, 1222 (9th Cir. 2009)

26  (quoting Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995)); accord Valentine, 574 F.3d at

4

690.  "The ALJ is responsible for determining credibility, resolving conflicts in medical

testimony, and for resolving ambiguities."  Andrews, 53 F.3d at 1039; see also Tommasetti v.

Astrue, 533 F.3d 1035, 1041 (9th Cir. 2008) ("[T]he ALJ is the final arbiter with respect to

resolving ambiguities in the medical evidence.").  Findings of fact that are supported by

substantial evidence are conclusive.  42 U.S.C. § 405(g); see also McCarthy v. Apfel, 221 F.3d

1119, 1125 (9th Cir. 2000).

         "Where the evidence as a whole can support either a grant or a denial, [the court]

may not substitute [its] judgment for the ALJ's."  Bray, 554 F.3d at 1222; Ryan v. Comm'r of

Soc. Sec., 528 F.3d 1194, 1198 (9th Cir. 2008) ("'Where evidence is susceptible to more than

one rational interpretation,' the ALJ's decision should be upheld.") (quoting Burch v. Barnhart,

400 F.3d 676, 679 (9th Cir. 2005)).  However, the court "must consider the entire record as a

whole and may not affirm simply by isolating a 'specific quantum of supporting evidence.'"

Ryan, 528 F.3d at 1198 (quoting Robbins v. Soc. Sec. Admin., 466 F.3d 880, 882 (9th Cir.

2006)); accord Lingenfelter v. Astrue, 504 F.3d 1028, 1035 (9th Cir. 2007).  "To determine

whether substantial evidence supports the ALJ's decision, [a court] review[s] the administrative

record as a whole, weighing both the evidence that supports and that which detracts from the

ALJ's conclusion."  Andrews, 53 F.3d at 1039.

III.   DISCUSSION

       A.    The ALJ Did Not Rely Solely On The Opinion Of A Non-Examining Consultant

             The ALJ gave "substantial weight" to the opinion of consultative examiner Dr.

Patrick Wong, "reduced weight" to the opinion of consultative examiner Dr. Patricia White, and

"substantial weight" to the opinion of non-examiner Dr. Robert Paxton, finding that Dr. Wong's

opinion and Dr. Paxton's opinion were consistent with each other and were consistent with

plaintiff's treating records.  (AT 27-28.)

             Plaintiff argues that the ALJ incorrectly assessed the medical opinions of Drs.

Wong and White, and erred in adopting the opinion of Dr. Paxton.  (Mot. for Summ. J. 10-17.)

1    First, plaintiff claims that Dr. Wong's opinion did not actually corroborate Dr. Paxton's opinion

2    with respect to plaintiff's ability to interact with coworkers and ability to maintain persistence

3    and pace, and second, that the ALJ improperly rejected these components of Dr. Wong's opinion

4    and instead relied on a non-examining physician's opinion.  (Mot. for Summ. J. 10-14.)  As

5    described below, however, these arguments are premised upon plaintiff's erroneous reading of

6    Dr. Wong's opinion, and therefore both arguments lack merit.

7            The weight given to medical opinions depends in part on whether they are

8    proffered by treating, examining, or non-examining professionals.  Holohan v. Massanari, 246

9    F.3d 1195, 1201-02 (9th Cir. 2001); Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995).

10   Ordinarily, more weight is given to the opinion of a treating professional, who has a greater

11   opportunity to know and observe the patient as an individual.  Lester, 81 F.3d at 830; Smolen v.

12   Chater, 80 F.3d 1273, 1285 (9th Cir. 1996).

13           To evaluate whether the ALJ properly rejected a medical opinion, in addition to

14   considering its source, the court considers whether: (1) contradictory opinions are in the record;

15   and (2) clinical findings support the opinions.  An ALJ may reject an uncontradicted opinion of a

16   treating or examining medical professional only for "clear and convincing" reasons.  Lester, 81

17   F.3d at 830-31.  In contrast, a contradicted opinion of a treating or examining professional may

18   be rejected for "specific and legitimate" reasons.  Id.  While a treating professional's opinion

19   generally is accorded superior weight, if it is contradicted by a supported examining

20   professional's opinion (supported by different independent clinical findings), the ALJ may

21   resolve the conflict.  Andrews, 53 F.3d at 1041 (citing Magallanes v. Bowen, 881 F.2d 747, 751

22   (9th Cir. 1989)).  The regulations require the ALJ to weigh the contradicted treating physician

23   opinion, except that the ALJ in any event need not give it any weight if it is conclusory and

24   ////

25   ////

26   ////

1   supported by minimal clinical findings.[4]  Meanel v. Apfel, 172 F.3d 1111, 1114 (9th Cir. 1999)

2   (treating physician's conclusory, minimally supported opinion rejected); see also Magallanes,

3   881 F.2d at 751.  The opinion of a non-examining professional, without other evidence, is

4   insufficient to reject the opinion of a treating or examining professional.  Lester, 81 F.3d at 831.

5          In making an RFC determination, an ALJ can consider those limitations for which

6   there is support in the record, aside from properly-rejected evidence or subjective complaints,

7   including limitations "consistent with" a medical source's findings.  See Batson v. Comm'r of

8   the Soc. Sec. Admin., 359 F.3d 1190, 1197-98 (9th Cir. 2004) (finding that "substantial

9   evidence" supported ALJ's RFC determination that plaintiff "can walk about four blocks at a

10  time, stand for one hour, sit for one hour, occasionally lift 10-20 pounds, and drive for 15

11  minutes at a time," because these findings were "consistent with" — albeit not identical to —

12  examining therapist's determination that plaintiff "can lift 26 pounds occasionally, lift 13 pounds

13  frequently, and complete an 8 hour work day given an opportunity to change positions")

14  (emphasis added); Bayliss v. Barnhart, 427 F.3d 1211, 1217 (9th Cir. 2005) (upholding ALJ's

15  RFC determination because "the ALJ took into account those limitations for which there was

16  record support that did not depend on Bayliss's subjective complaints.").

17         An ALJ does not need to adopt any specific medical source's RFC assessment as

18  his or her own.  Vertigan v. Halter, 260 F.3d 1044, 1049 (9th Cir. 2001) ("It is clear that it is the

19  responsibility of the ALJ, not the claimant's physician, to determine residual functional

20  capacity.");  20 C.F.R. § 416.946 ("[T]he administrative law judge . . .  is responsible for

21  assessing your residual functional capacity.").  When an ALJ rationally interprets the available

22  evidence in forming his or her opinion, the court will defer to the ALJ's conclusion.  Batson, 359

23  F.3d at 1198 (citing Andrews, 53 F.3d at 1041) ("When the evidence before the ALJ is subject to

24

---

25      [4]  The factors include: (1) length of the treatment relationship; (2) frequency of
    examination; (3) nature and extent of the treatment relationship; (4) supportability of diagnosis;
26  (5) consistency; (6) specialization.  20 C.F.R. § 404.1527.

1   more than one rational interpretation, we must defer to the ALJ's conclusion."); see also Sprague

2   v. Bowen, 812 F.2d 1226, 1229-30 (9th Cir. 1987) ("The general rule is that conflicts in the

3   evidence are to be resolved by the Secretary . . . and that the Secretary's conclusion must be

4   upheld where there is more than one rational interpretation of the evidence.").

5           1.      Dr. Wong's Opinion

6                   Dr. Wong conducted a consultative evaluation of plaintiff on April 12, 2008.  (AT

7   715.)  During this examination, Dr. Wong assessed plaintiff's history, mental status, and

8   functional ability.  (AT 715-17.)

9                   Central to plaintiff's argument on appeal are two sentences of Dr. Wong's opinion

10  regarding plaintiff's ability to interact with coworkers and ability to maintain pace and

11  endurance.  These two sentences are excerpted below, in context and with emphasis added.  In

12  regards to plaintiff's ability to maintain pace and endurance, Dr. Wong opined:

13              At this time, [plaintiff] is cognitively intact and is capable of
                carrying out simple and complex instructions.  *His ability to*
14              *maintain an adequate pace and level of endurance over an*
                *eight-hour workday is probably at this point still markedly*
15              *impaired, but this is because he has no interest or motivation at*
                *succeeding with exposure therapy and progressive*
16              *desensitization of his symptoms.*

17  (AT 717 (emphasis added).)  Similarly, in regards to plaintiff's ability to interact with coworkers,

18  Dr. Wong opined:

19
20              [Plaintiff's] ability to take directions from a supervisor
                appears to be intact in my opinion.  *His ability to relate to*
21              *coworkers and the public is still markedly impaired, but*
                *once again this is because he has no interest in improving*
22              *beyond his current comfortable state.*  The probability of
                functional deterioration due to typical workplace stressors is
23              not felt to be elevated.  In fact for this individual the
                avoidance of stress begets stress and avoidance.

24  (AT 717 (emphasis added).)  In a nutshell, Dr. Wong recognized potentially "marked limitations"

25  upon plaintiff's abilities to interact with coworkers and to maintain pace and endurance, but Dr.

26  Wong ultimately opined that such "limitations" were *self-imposed* due to plaintiff's lack of

1    "interest" in improving upon them.  (Id.)

2            Although plaintiff's arguments center on Dr. Wong's opinions regarding

3    plaintiff's ability to interact with coworkers and maintain pace, the other aspects of Dr. Wong's

4    opinion are further summarized here for context.  With respect to plaintiff's history, Dr. Wong

5    noted that plaintiff "has had problems with anxiety ever since about 1989-190 [sic]" when he

6    began to have resentful and violent thoughts towards his business partner, with whom he

7    operated a T.V. repair company.  (AT 715-17.)  Plaintiff alleged to Dr. Wong that he had

8    developed an obsessive-compulsive disorder that made him "afraid to leave his house" and

9    instilled in him "a sense of high anxiety."  (Id.)  However, he also told Dr. Wong that he believed

10   he was "benefitting from treatment and enjoys going to 'movie group' at County Mental Health,"

11   where "[h]e goes once a week to watch a movie and chitchat with other patients."  (Id.)

12   Additionally, he stated that he was "benefitting from his medications," which consisted of

13   "Prozac 20 mg daily three pills daily and propranolol 20 mg two pills twice a day."  (Id.)  Dr.

14   Wong observed that plaintiff "currently has waxing and waning of his obsessive-compulsive

15   syndromes."  (Id.)  He additionally noted that:

16            [Plaintiff] has no hand washing.  He has no hyperreligiosity.  He does have
             issues around scrupulosity and order.  Things have to be straight and neat
17            and tidy when laid out in front of him.  He has no suicidal or homicidal
             thoughts.  He has no loss of appetite.  He has no loss of joy.  He enjoys his
18            relationship with his girlfriend of 26 years.  They watch a lot of TV, play
             cards, used to go out with her to baseball games, watch movies, and go out
19            to dinner with her in the past, but not so much anymore.  He has no
             hallucinosis.  He has no posttraumatic symptoms.  he [sic] has no periods
20            of hyperactivity associated with racing thoughts, decreased need for sleep,
             and impulsiveness.  He has no chemical dependency history.

21

22   (Id.)  Additionally, Dr. Wong noted that plaintiff has never been hospitalized for a psychiatric

23   condition, but that he does receive treatment at the San Joaquin County Mental Health Clinic in

24   the form of weekly group movie therapy sessions.  (Id.)  However, Dr. Wong determined that the

25   plaintiff's treating records from the clinic "do not suggest aggressive treatment of his phobic

26   avoidance," and that he had not made an "effort to desensitize himself to the patterns of phobic

9

1   avoidance." (Id.)

2          With respect to plaintiff's behavior, Dr. Wong observed that plaintiff

3 demonstrated reasonable assertiveness, showed no signs of autonomic arousal or somatic anxiety,

4 "was animated and chatty," made good eye contact, and had a "cheerful" demeanor.  (AT 716.)

5 Dr. Wong also noted that, during his examination, plaintiff's "[a]ffect at no time exhibited any

6 anxiety," and that plaintiff "appeared fairly comfortable" with a well-modulated affect.  (Id.)

7 Additionally, Dr. Wong found plaintiff to have generally linear and well organized thought form,

8 no suicidal or homicidal ideation, an intact memory, and good attention and ability to

9 concentrate.  (AT 716-17.)

10         Ultimately, Dr. Wong diagnosed plaintiff with "[a]nxiety order, not otherwise

11 specified." (AT 717.)  Dr. Wong noted that plaintiff "has some social anxiety and some

12 obsessive-compulsive symptoms," but that plaintiff was not "as impaired by his anxiety

13 condition as he portrays it." (Id.)  Additionally, Dr. Wong observed that plaintiff was obese and

14 gave him a GAF score of "60 to 70 in the last year and 60 to 70 at the current time."[5]  (Id.)

15         2.    Dr. Paxton's Opinion

16         On May 1, 2008, Dr. Paxton conducted a review of plaintiff's treating records and

17 Dr. Wong's opinion.  (AT 718-35.)  Based on this review, Dr. Paxton made his own RFC

18 assessment, finding plaintiff mostly unlimited in his ability to carry out typical work-related

19 activities.  (AT 729-31.)  Dr. Paxton found plaintiff to be "moderately limited" with respect to

20 his ability to carry out detailed instructions and ability to appropriately interact with the public.

21 (Id.)  Additionally, Dr. Paxton determined that plaintiff had "mild" difficulties with respect to

22

23      [5]   Global Assessment of Function, or "GAF," is a scale reflecting "psychological, social, and occupational functioning on a hypothetical continuum of mental health-illness."  American

24 Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders 34, (4th ed. 2000) ("DSM IV").   According to the DSM IV, a GAF of 61-70 suggests "[s]ome mild

25 symptoms (e.g., depressed mood and mild insomnia) or some difficulty in social, occupational, or school functioning (e.g., occasional truancy, or theft within the household), but generally

26 functioning pretty well, has some meaningful interpersonal relationships."  Id.

1   activities of daily living, social functioning, and maintaining concentration, persistence, and pace.

2   (AT 726.)  He also found that plaintiff had suffered one or two episodes of decompensation of an

3   extended duration.  (Id.)  Ultimately, Dr. Paxton opined that plaintiff "has the cognitive and

4   concentrative capacity to perform[,] understand[,] and remember simple level tasks and

5   instructions.  No adaptive limitations.  Able to work in a non public setting."  (AT 731.)

6              3.      The ALJ's RFC Assessment

7              The ALJ found that plaintiff had the RFC "to perform a full range of work at all

8   exertional levels," but also found that plaintiff was "limited to work involving simple

9   instructions and having relatively restricted contact with the public."  (AT 26.)  In rendering his

10  RFC assessment, the ALJ stated that he gave "substantial weight" to Dr. Wong's opinion and to

11  Dr. Paxton's opinion, reasoning that both opinions were generally consistent with each other and

12  were consistent with plaintiff's treatment records.  (AT 26-28.)

13             Plaintiff contends that the ALJ's reliance on the mutual consistency of these

14  medical opinions is flawed because "Dr. Wong's opinion . . . in fact significantly differs from

15  that rendered by . . . Dr. Paxton."  (Mot. for Summ. J. at 11.)  Plaintiff argues that Dr. Wong's

16  and Dr. Paxton's opinions differ in two key respects.  (Mot. for Summ. J. at 11-12.)

17             First, plaintiff argues that the opinions differ regarding plaintiff's ability to

18  interact with coworkers.  According to plaintiff, Dr. Wong opined that plaintiff has "marked"

19  limitations in ability to interact with coworkers.  (Mot. for Summ. J. at 11-12.)  Dr. Paxton, on

20  the other hand, did not assess any limitations on plaintiff's ability to interact with coworkers.

21  (Id.)

22             Second, plaintiff argues that the opinions differ in regards to plaintiff's ability to

23  maintain the pace and endurance necessary for an 8-hour workday.  According to plaintiff, Dr.

24  Wong opined that plaintiff had "marked" limitations in pace and endurance.  (Id.)  Dr. Paxton, on

25  the other hand, assessed only "mild" limitations on plaintiff's ability to maintain pace.  (Id.)

26  ////

Premising his argument upon these perceived differences in medical opinion, plaintiff argues that the ALJ's RFC assessment does not adopt the portions of Dr. Wong's opinion regarding plaintiff's "marked" limitations on abilities to interact with coworkers and maintain pace, and that the ALJ should have given reasons for not adopting those portions. (Mot. for Summ. J. at 11-12.)  Plaintiff also argues that "[t]he ALJ's RFC finding, in reality corresponding only on [sic] the opinion of the nonexaminer, cannot be deemed supported by substantial evidence." (Mot. for Summ. J. at 11-12.)  The undersigned takes Dr. Wong's opinion as a whole and reads his assessments of plaintiff's functional limitations fully and in context. For the reasons stated below, the undersigned finds that plaintiffs' arguments lack merit.

    4.    <u>Plaintiff's Arguments Are Based On A Misreading Of Dr. Wong's Opinion</u>

First, the record supports the ALJ's determination that Dr. Wong's opinion and Dr. Paxton's opinion are generally consistent.  (AT 27-28 (noting similarities between opinions as to plaintiff's ability to understand and remember detailed or complex instructions, ability to interact with the public, plaintiff's routine treatment, and plaintiff's mild restrictions in daily living); <u>compare</u> AT 715-17 <u>with</u> 718-35.)  The general consistency of these opinions is unsurprising, given that Dr. Paxton did not actually examine plaintiff himself and rendered his opinion based upon reviewing Dr. Wong's opinion and other documents.[6]

Putting aside the similarities in these opinions, plaintiff's argument is premised upon his belief that the medical opinions differ in two key respects, namely, regarding plaintiff's

---

[6]  Plaintiff contends that Dr. Paxton "provided no rationale for failing to include" Dr. Wong's findings in his own opinion.  (Mot. for Summ. J. at 11.)  However, Dr. Paxton did take into account Dr. Wong's findings, summarizing them in his own report.  (AT 733.)  Additionally, he agreed with Dr. Wong's limitation findings, opining that plaintiff could only "perform[,] understand[,] and remember simple level tasks and instructions" and was only "[a]ble to work in a non public setting."  (AT 731.)  Contrary to plaintiff's assertion, Dr. Paxton's opinion is not inconsistent with Dr. Wong's opinion.  <u>See Batson</u>, 359 F.3d at 1197-98.  Therefore, the ALJ did not err in finding that the opinions were consistent and properly cited the consistency between the two opinions as one reason for according "substantial weight" to both of them.

abilities to interact with coworkers and maintain pace.  (Mot. for Summ. J. at 11-12.)  However, on review of the record, the undersigned finds — as the ALJ properly did — that the opinions do not actually differ in the way plaintiff suggests.  While plaintiff strives to frame the ALJ's decision as *rejecting* Dr. Wong's opinion regarding plaintiff's abilities to interact with coworkers and maintain pace, in fact, the ALJ actually *adopted* these portions of Dr. Wong's opinion.

As described above, Dr. Wong opined that "[plaintiff's] ability to maintain an adequate pace and level of endurance over an eight-hour workday is probably at this point still markedly impaired, *but this is because he has no interest or motivation at succeeding with exposure therapy and progressive desensitization of his symptoms*."  (AT 717 (emphasis added).)  Similarly, he opined that "[plaintiff's] ability to relate to coworkers and the public is still markedly impaired, *but once again this is because he has no interest in improving beyond his current comfortable state*."  (Id. (emphasis added).)  Contrary to plaintiff's framing, then, Dr. Wong did *not* opine that plaintiff's functionality has medically-based, "marked" limitations with respect to pace, endurance, and ability to relate to coworkers.  Instead, Dr. Wong opined that such potential limitations were *self-imposed* and due to plaintiff's lack of interest and/or lack of motivation to seek improvement, such as through exposure and desensitization therapy.[7]  (Id. at 26-27, 717.)

When Dr. Wong's opinion is accurately quoted and reviewed in context and in its entirety, it is apparent that the ALJ *did not reject* Dr. Wong's opinions regarding limits on plaintiff's abilities to interact with coworkers and maintain pace.  In fact, the ALJ adopted these opinions.  Specifically, the ALJ adopted Dr. Wong's opinion that what would otherwise be "marked" functional limitations were actually only self-imposed limitations resulting from, in Dr. Wong's words, plaintiff's having "no interest or motivation" to improve upon such limitations.

---

[7]  Moreover, Dr. Wong even opined that plaintiff *should* work, explaining that, "[i]n fact[,] for this individual the avoidance of stress begets stress and avoidance." (AT 717.)  Dr. Wong also found that "the claimant at the current time is making no effort to desensitize himself to his patterns of phobic avoidance."  (Id. at 715.)

(AT 717.)  The ALJ accurately summarized and discussed Dr. Wong's opinions at length, and

repeatedly referenced Dr. Wong's findings that plaintiff made little effort to improve his

symptoms of phobic avoidance and could improve his pace and endurance with therapy.[8]  (AT

27-28.)  The ALJ repeatedly quoted Dr. Wong's characterizations of the "limitations" at issue as

being self-imposed, before ultimately giving "substantial weight" to that opinion and assessing

plaintiff's RFC as not including these self-imposed limitations.  (AT 27-28.)  In short, the ALJ

did not reject Dr. Wong's opinions about plaintiff's limitations; more accurately, he adopted Dr.

Wong's opinions that plaintiff's so-called limitations were self-imposed.

        Where medical records disclose that functional limitations are "self-imposed," the

ALJ may properly discount a claimant's assertion of those so-called "limitations."  See Connett

v. Barnhart, 340 F.3d 871, 873-74 (9th Cir. 2003) (holding that ALJ did not err in discounting

claimant's testimony about her "functional restrictions," because the ALJ determined that "the

medical records disclosed that these restrictions were self-imposed . . .").  Indeed, "[a] claimant's

*limitation which is self-imposed rather than a medical necessity* is a basis on which an ALJ may

discredit a claimant's alleged limitation."  Stone v. Astrue, 804 F. Supp. 2d 975, 986 (D. Ariz.

2011) (emphasis added) (citing Blakeman v. Astrue, 509 F.3d 878, 882 (8th Cir. 2007).)[9]  The

ALJ is entitled to draw logical inferences from the substantial evidence, including inferences

from a claimant's lack of motivation.  Tommasetti, 533 F.3d at 1040 (holding that the ALJ was

entitled to reasonably infer that plaintiff lacked the motivation to work given his financial

---

[8]  The ALJ also explained that Dr. Wong also noted that plaintiff's "symptoms are not as debilitating as he chooses to portray them" and that "[t]he level of distress that he describes is inconsistent with what is evident in his behavior and mental status."  (AT 27.)  Further, the ALJ described Dr. Wong's report that plaintiff indicated he enjoys group therapy and leaves his house to watch a movie and socialize weekly at a mental health center.  (Id.)

[9]  While these authorities analyze the impact of "self-imposed" limitations in the context of whether an ALJ erred in making a credibility determination rather than in the context of whether the ALJ improperly weighed the medical opinion evidence, credibility determinations bear on evaluations of medical evidence when an ALJ is presented with conflicting medical opinions or inconsistency between a claimant's subjective complaints and diagnosed condition. See Webb v. Barnhart, 433 F.3d 683, 688 (9th Cir. 2005).

1  reserves).)

2         Here, given that Dr. Wong opined that plaintiff has *self-imposed* limits in his

3  abilities to interact with coworkers and maintain pace, the ALJ was entitled to reasonably infer

4  that the "limitations" were not significantly limiting.  (AT 717.)  See Tommasetti, 533 F.3d at

5  1040; Connett, 340 F.3d at 873-874; Stone, 804 F. Supp. 2d at 986.  The ALJ adopted Dr.

6  Wong's opinions that plaintiff's limitations were self-imposed rather than a "medical necessity"

7  see Stone, 804 F. Supp. 2d at 986, such that the ALJ properly excluded those limitations from his

8  RFC assessment.  (AT 27-28.)

9         While plaintiff's motion by and large ignores the detail that Dr. Wong

10 characterized plaintiff's so-called "limitations" as self-imposed, plaintiff concludes his argument

11 with a swift attempt to minimize such characterization:

12              Perhaps it will be argued that Dr. Wong's [findings] did not need
               to be included in the RFC . . . due to the doctor's assertions that the
13              limitations were related to a failure to obtain certain treatment such
               as exposure therapy and progressive desensitization.  [Citation.]
14              However, it is not the role of a consultative examiner to prescribe
               treatment.  [citations.]  Moreover, the ALJ made no finding
15              specifically acknowledging that [plaintiff] experienced the
               limitations at issue yet would not had he followed prescribed
16              treatment.  [Plaintiff's] limitations needed to first be recognized for
               what they are prior to development of any rationale designed to
17              disregard them.  That Dr. Wong believed the claimant could
               improve his condition through treatment is thus immaterial to the
18              question at bar.
    w
19 (Mot. for Summ. J. at 13-14 (citations to administrative transcript omitted); accord Reply at 2.)

20 The undersigned disagrees with plaintiff's suggestion that, if anything, the issue of plaintiff's

21 self-imposed limitations should be analyzed under the "failure to obtain prescribed treatment"

22 rubric.  In actuality, the issue is not whether Dr. Wong could properly prescribe treatment as an

23 examining physician, nor is it whether plaintiff failed to follow such prescribed treatment.

24 Instead, Dr. Wong *himself* opined that plaintiff's so-called limitations were self-imposed.  (AT

25 717.)  That medical opinion itself constitutes evidence that the "limitations" were *not* the result

26 of actual medical necessity, and the ALJ was entitled to draw reasonable inferences from such

                                        15

1    evidence.  See Stone, 804 F. Supp. 2d at 986; Tommasetti, 533 F.3d at 1040.  The ALJ

2    repeatedly quoted Dr. Wong's opinion, gave it "substantial weight," and drew the reasonable

3    inference that plaintiff's RFC did not include self-imposed limitations on ability to work with

4    coworkers or maintain pace.  (AT 26-27.)  In other words, because Dr. Wong *himself* found that

5    the limitations were self-imposed, the ALJ could properly rely on that medical evidence without,

6    as plaintiff suggests, first having to "recognize" plaintiff's "limitations" and then having to use

7    plaintiff's "failure to follow prescribed treatment" as a "rationale designed to disregard them."

8    (Mot. for Summ. J. at 13-14.)

9              In sum, plaintiff's argument that the ALJ failed to give proper reasons for

10   rejecting portions of Dr. Wong's opinion is not well-taken.  Put simply, the ALJ did not give

11   reasons for rejecting the opinion because the ALJ did not reject the opinion.  Taking Dr. Wong's

12   opinion in context and in full, including all parts of the above-quoted statements — wherein Dr.

13   Wong describes "limitations" in plaintiff's functional abilities and in the same sentence

14   characterizes them as self-imposed — the undersigned finds that the ALJ did not err in assessing

15   the medical opinion evidence.  Dr. Wong's opinion is consistent with Dr. Paxton's opinion, and

16   the ALJ's RFC assessment is consistent with both opinions.  See Batson, 359 F.3d at 1197-98.

17             The undersigned also rejects plaintiff's related argument that the ALJ improperly

18   adopted a non-examining physician's opinion.  On review of the record, no conflict actually

19   exists between Dr. Wong's and Dr. Paxton's opinions regarding plaintiff's abilities to interact

20   with coworkers and maintain pace.  Accordingly, because the undersigned rejects plaintiff's

21   threshold premise that Dr. Wong assessed plaintiff as actually suffering "marked" limitations

22   based in medical necessity, the undersigned rejects plaintiff's corresponding arguments.  Plaintiff

23   has not shown the ALJ erred in assessing the medical evidence or in rendering his RFC

24   assessment.

25   ////

26   ////

16

1       B.      The ALJ Articulated Sufficient Reasons For Giving "Reduced Weight" To
                The Opinion Of Examining Physician Dr. White

2

3              Plaintiff also argues that the ALJ "failed to articulate specific and legitimate

4      reasons" for according "reduced weight" to Dr. White's opinion.  (Mot. for Summ. J. at 14-17.)

5      This argument is not well-taken.

6               Again, the contradicted opinion of an examining physician, like Dr. White, may

7      be rejected for "specific and legitimate" reasons supported by substantial evidence.  See Lester,

8      81 F.3d at 830.  "'The ALJ can meet this burden by setting out a detailed and thorough summary

9      of the facts and conflicting clinical evidence, stating his interpretation thereof, and making

10     findings.'"  Tommasetti, 533 F.3d at 1041.

11             1.      Dr. White's Opinion

12             Dr. White examined plaintiff on October 13, 2009, by conducting a review of

13     plaintiff's prior medical records, interviewing plaintiff, and making her own RFC assessment.

14     (AT 736-45.)  During her interview with plaintiff, Dr. White noted that plaintiff "has obsessive

15     thoughts about dirt and germs" and "has many checking and counting rituals."  (Id. at 738.)

16     Plaintiff told Dr. White that "he realizes the irrationality . . . of his thoughts and compulsive

17     rituals and makes an effort to control his thoughts and behavior as much as he can.  (Id. at 739.)

18     He also told her that " he knows how to cover up his obsessive-compulsive symptoms" and that

19     he found his "medications to be of some benefit" in containing his obsessive thoughts and

20     compulsive behaviors.  (Id.)  However, he also stated that "most of his time and energy is taken

21     up with his obsessive thoughts and compulsive rituals" and that he found "it very difficult to

22     break out of his daily rigid regimens despite his conscious desire to do so."  (Id. at 740.)

23     Additionally, Dr. White found that plaintiff was "doing what most OCD patients do — try to

24     look normal and disguise their symptoms."  (Id.)

25             Based on plaintiff's statements and records, Dr. White concluded that plaintiff

26     "suffers from a severed [sic] type of Obsessive-Compulsive Disorder, that has Ben [sic] present

1  to some degree since the age of 17 . . . ."  (Id.)  She also determined that plaintiff's prognosis for

2  foreseeable future improvement is "guarded" and that plaintiff "seems to have reached the

3  maximum level of improvement possible in his present treatment program."  (Id.)

4        Dr. White also expressly disagreed with Dr. Wong's opinion.  Specifically, she

5  stated that "I do not agree with Dr. Wong that Mr. Warn suffers from a social anxiety phobia of

6  some kind or that he would benefit from being in a desensitization program in order to deal with

7  his phobia.  I do not agree with his suggestion that Mr. Warn is exaggerating his psychological

8  complaints in any way."  (Id.)  Ultimately, Dr. White opined that plaintiff "is precluded from

9  substantial gainful activity at this time and is very likely to remain so impaired for a further

10  period of twelve months or more."  (Id.)  Overall, Dr. White found that plaintiff was mildly

11  limited with respect to understanding and memory, and was moderately-to-markedly limited with

12  respect to his abilities regarding social interaction and sustained concentration and persistence.

13  (Id. at 741-42.)

14        Here, the ALJ summarized the facts and conflicting clinical evidence (Id. at 26-

15  28), then ultimately concluded that Dr. White's opinion was entitled to reduced weight, and gave

16  reasons for his conclusion.  The ALJ gave the following reasons for according "reduced weight"

17  to Dr. White's opinion:

18        It is emphasized that the claimant underwent the examination that formed
   the basis of the opinion in question, not in an attempt to seek treatment for

19  symptoms, but rather, through attorney referral and in connection with an
   effort to generate evidence for the current appeal.  Further, the doctor was

20  presumably paid for the report.  Although such evidence is certainly
   legitimate and deserves due consideration, the context in which it was

21  produced cannot be entirely ignored.  *The doctor apparently relied quite
   heavily on the subjective report of symptoms and limitations provided by*

22  *the claimant, and seemed to uncritically accept as true, most, if not all, of
   what the claimant reported.  Yet, as explained elsewhere in this decision,*

23  *there exists good reasons for questioning the reliability of the claimant's
   subjective complaints.  Moreover, Dr. White's report appears to contain*

24  *discrepancies from the records.*  For example, Dr. White stated that the
   claimant no longer drives . . . . However, the claimant testified that he

25  drives occasionally.  Additionally, it is important to note that Dr. White
   was a one-time examining doctor, not the claimant's treating physician.

26

1  (AT 28 (emphasis added).)

2        The ALJ gave diminished weight to Dr. White's opinion in part because it

3  uncritically accepted many of plaintiff's subjective complaints.  "An ALJ may reject a . . .

4  physician's opinion if it is based 'to a large extent' on a claimant's self-reports that have been

5  properly discounted as incredible."  Tommasetti, 533 F.3d at 1041 (citing Morgan v. Comm'r

6  Soc. Sec. Admin., 169 F.3d 595, 602 (9th Cir. 1999).)  As described further below, the ALJ did

7  not err in finding plaintiff less-than-credible regarding the extent of his symptoms, so the ALJ

8  did not err in giving Dr. White's opinion reduced weight insofar as it was based upon plaintiff's

9  less-than-credible statements.  Indeed, a review of Dr. White's records confirms that they largely

10  reflect plaintiff's own reports that he is largely immobilized by his mental condition, with little

11  independent analysis.  (See AT 738-40.)

12        Plaintiff argues that because Dr. White opined that plaintiff was trying to disguise

13  his obsessive-compulsive symptoms, this opinion demonstrates that Dr. White did not merely

14  accept plaintiff's statements at face value.  (Mot. for Summ. J. at 16.)   However, this argument

15  overlooks the fact that Dr. White expressly determined that plaintiff was *credible* regarding the

16  severity of the symptoms he was trying to disguise.  (AT 740 ("I do not agree with [Dr. Wong's]

17  suggestion that Mr. Warn is exaggerating his psychological complaints in any way.").)  Thus, the

18  fact that Dr. White's opinion was largely based on statements by a plaintiff that the ALJ

19  determined to be less-than-credible amounts to a specific, legitimate reason for giving Dr.

20  White's opinion reduced weight.  See Tommasetti, 533 F.3d at 1041.

21        Additionally, while the two examining physicians disagreed about plaintiff's

22  credibility, conflicts in the evidence are to be resolved by the ALJ, and where there is more than

23  one rational interpretation of the evidence, the court must uphold the ALJ's conclusion.  Sprague,

24  812 F.2d at 1230.  Thus, the ALJ analyzed both medical opinions in light of the other evidence in

25  the record, and in light of his own observations regarding plaintiff's credibility.  (AT 26-28.)  He

26  then gave substantial weight to Dr. Wong's opinion in part because it was not based upon an

unquestioning acceptance of plaintiff's reports of symptoms, and gave reduced weight Dr.

White's opinion, which was largely based on acceptance of such reports.  (Id.)  Accordingly, the

ALJ did not err in discounting Dr. White's opinion insofar as it was based largely on reports

from a less-than-credible plaintiff.  See Tommasetti, 533 F.3d at 1041.

As a separate specific and legitimate reason for discounting Dr. White's opinion,

the ALJ explained that Dr. White's opinion conflicted with the rest of the record.  (AT 28 ("Dr.

White's report appears to contain discrepancies from the records.  For example, Dr. White stated

that the claimant no longer drives.  However, the claimant testified that he drives

occasionally.").)

Plaintiff argues that the single discrepancy the ALJ used as an "example"— that

Dr. White noted that plaintiff does not drive even though plaintiff testified that he occasionally

drives—is not a proper basis for discrediting Dr. White's opinion.  (Mot. for Summ. J. at 16.)

However, the ALJ did not solely rely on the single "example" of plaintiff's driving.  Indeed, the

ALJ found that there were "discrepancies," plural, between Dr. White's opinion and the rest of

the record, and the ALJ's decision identified other specific examples of such discrepancies.  (AT

27-28.)  In particular, the ALJ accurately noted that plaintiff "enjoys" his group therapy and

interacting with individuals at his group sessions, and the evidence supports this finding.  (AT

27, 759 ("I had group yesterday and I enjoyed it.  I usually feel a little better after my group

sessions" and "[j]ust got home from group, enjoyed talking with Victoria and Dale.").)  The ALJ

also relied on evidence that plaintiff "has no loss of appetite or loss of joy and enjoys his

relationship with his girlfriend of 26 years," and the record supports that finding.  (AT 27;

715-17.)  From this and other similar evidence, the ALJ reasoned that plaintiff has the "ability

and willingness to leave his house and interact with others," illuminating another significant

"discrepancy" between the record evidence and Dr. White's opinion that plaintiff is moderately-

to-markedly limited with respect to his abilities regarding social interaction.  (AT 27; 741-42;

769-70.)  Needless to say, evidence of plaintiff's *enjoying* interacting with others is contrary to

20

1   that opinion.  Further, as detailed above, Dr. Wong's opinion that limitations on plaintiff's social

2   abilities are self-imposed is additional evidence in "discrepancy" with Dr. White's opinion in that

3   regard.  It cannot be said that the ALJ did not identify any actual "discrepancies" between Dr.

4   White's opinion and other evidence in the record.

5          Given the foregoing, plaintiff has not shown that the ALJ erred in giving Dr.

6   White's opinion "reduced weight."[10]

7          C.     The ALJ Properly Assessed The Credibility Of Plaintiff's Testimony And The
               Lay Witness Testimony

8

9          Plaintiff challenges the ALJ's credibility determinations regarding plaintiff's

10  testimony and as to his girlfriend's testimony.  (Mot. for Summ. J. at 12-13.)  The ALJ found that

11  plaintiff's "statements concerning the intensity, persistence and limiting effects of [plaintiff's]

12  symptoms [were] not credible to the extent they [were] inconsistent with" the RFC.  (AT 16.)

13         An ALJ must conduct a two-step analysis "[t]o determine whether a claimant's

14  testimony regarding subjective pain or symptoms is credible."  Lingenfelter v. Astrue, 504 F.3d

15  1028, 1035-36 (9th Cir. 2007).  In Lingenfelter, the Ninth Circuit Court of Appeals summarized

16  the two-step process as follows:

17  _____

18        [10]  The ALJ also offered two erroneous reasons for rejecting Dr. White's opinion.  First,
    the ALJ emphasized the fact that Dr. White's examination was obtained through referral by
19  plaintiff's attorney to generate evidence for the hearing and was presumably paid for conducting
    the examination.  (AT 28.)  Second, the ALJ noted that Dr. White was not a treating physician
20  and only examined plaintiff once.  (Id.)  Neither of these reasons are proper.  As to the first
    reason, all consultative examiners are sought in order to produce evidence for the SSI or DIB
21  application process and are paid for their services.  See 20 C.F.R. § 404.1519.  The second reason
    is also unpersuasive because the very nature of a consultative examination generally limits an
22  examining physician to a single opportunity to analyze a claimant.  See id.  Despite these
    erroneous reasons, the ALJ's gave other, valid reasons for according diminished weight to Dr.
23  White's opinion, so the ALJ's error was harmless.  Carmickle v. Comm'r, Soc. Sec. Admin., 533
    F.3d 1155, 1162 (9th Cir. 2008) (a single erroneous basis for an ALJ's determination is harmless
24  error if valid reasons supporting that determination remain); e.g., Townsend v. Astrue, No.
    6:12–CV–00261–SI, 2013 WL 687042, at *4 n.1 (D.Or. Feb. 25, 2013) (unpublished) ("Because
25  the ALJ provided a legally sufficient reason to reject [treating physician's] opinion, however, the
    Court need not consider" plaintiff's argument challenging one of several reasons the ALJ gave
26  for rejecting that opinion) (citing Carmickle).

                                            21

First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged. The claimant, however, need not show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom. Thus, the ALJ may not reject subjective symptom testimony . . . simply because there is no showing that the impairment can reasonably produce the degree of symptom alleged.

Second, if the claimant meets this first test, and there is no evidence of malingering, the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so. . . .

Id. at 1036 (citations and quotation marks omitted).  In weighing a claimant's credibility, an ALJ may consider, among other things, the "'[claimant's] reputation for truthfulness, inconsistencies either in [claimant's] testimony or between [his] testimony and [his] conduct, [claimant's] daily activities, [his] work record, and testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which [claimant] complains."  Thomas v. Barnhart, 278 F.3d 947, 958-59 (9th Cir. 2002) (modifications in original) (quoting Light v. Soc. Sec. Admin., 119 F.3d 789, 792 (9th Cir. 1997)); see also Burch, 400 F.3d at 680 ("In determining credibility, an ALJ may engage in ordinary techniques of credibility evaluation, such as considering claimant's reputation for truthfulness and inconsistencies in claimant's testimony.").  If the ALJ's credibility finding is supported by substantial evidence in the record, the court "may not engage in second-guessing."  Thomas, 278 F.3d at 959.

        1.    Plaintiff's Testimony

Neither the ALJ nor the Commissioner cited to evidence of malingering, and there appears be none, so the ALJ was required to provide specific, clear, and convincing reasons for discounting plaintiff's credibility.  See Lingenfelter, 504 F.3d at 1035-36.  The ALJ gave a number of reasons for discrediting plaintiff's subjective complaints.

        a.    Lack of Medical Evidence

"[A]fter a claimant produces objective medical evidence of an underlying

1    impairment, an ALJ may not reject a claimant's subjective complaints based solely on a lack of

2    medical evidence to fully corroborate the alleged severity of pain." Burch, 400 F.3d at 680

3    (citing Bunnell v. Sullivan, 947 F.2d 341, 345 (9th Cir. 1991)).

4          Although lack of medical evidence cannot form the sole basis for discounting

5    plaintiff's subjective symptom testimony, it is nevertheless a relevant factor for the ALJ to

6    consider.  Burch, 400 F.3d at 681.  Generally, noting a conflict between a claimant's subjective

7    complaints and the objective medical evidence in the record constitutes a specific and substantial

8    reason for an ALJ to find that claimant not credible.  See Morgan, 169 F.3d at 600 ("Citing the

9    conflict between [the claimants's] testimony of subjective complaints and the objective medical

10   evidence in the record . . . the ALJ provided specific and substantial reasons that undermined [the

11   claimant's] credibility.").

12         Here, the ALJ found that "[t]he evidence does not support [plaintiff's] allegations

13   regarding the severity and limiting nature of his impairment," and that "[t]he evidence does not

14   support the claimant's assertion that he cannot leave the house without severe and unmanageable

15   anxiety." (AT 27.)  The ALJ determined that plaintiff's own statements to Dr. Wong indicate

16   that plaintiff benefitted from his treatment and that he was willing and able to "leave his house

17   and interact with others." (Id.)  As the ALJ noted, the records show that plaintiff regularly left

18   the house to go to his group therapy sessions and do other activities, such as going out for coffee

19   and vacationing with his girlfriend.  (See, e.g., AT 158, 573, 580-612.)  The ALJ also relied on

20   Dr. Wong's findings that plaintiff "appeared very comfortable" and "at no time did he exhibit

21   anxiety." (AT 27, 716.)  While the medical record reveals that plaintiff has been undergoing

22   treatment for his mental impairments for decades, the record nonetheless confirms that plaintiff's

23   "treatment records consistently indicate that he is 'stable' and supportive of other patients," a fact

24   the ALJ reasonably believed undermined plaintiff's own reports of his severe symptoms.  (AT

25   25, 27, 253, 277, 280-81, 284, 565, 573, 591, 611.)

26   ////

To be sure, the record also contains contrary evidence suggesting that plaintiff's abilities to engage in social interactions are more limited.  (Mot. for Summ. J. at 18-19; e.g., AT 243-47 (claimant "becomes panicky when talking about having to go to the interview" and "doesn't go many places [because] it increases his anxiety"), 261 (claimant "remains isolative" and "stayed home alone on Thanksgiving while his girlfriend went to her family's"), 524.) However, it is the function of the ALJ to resolve conflicts in the evidence, and the undersigned finds the ALJ's assessment to be reasonable and supported by substantial evidence.  See Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001) (affirming ALJ's credibility determination even where the claimant's testimony was somewhat equivocal about how regularly she was able to keep up with all of the activities and noting that the ALJ's interpretation "may not be the only reasonable one"); see also Sprague, 812 F.2d at 1229-30 ("The general rule is that conflicts in the evidence are to be resolved by the Secretary . . . and that the Secretary's conclusion must be upheld where there is more than one rational interpretation of the evidence.").  As the Ninth Circuit Court of Appeals has explained:

> It may well be that a different judge, evaluating the same evidence, would have found [the claimant's] allegations of disabling pain credible.  But, as we reiterate in nearly every case where we are called upon to review a denial of benefits, we are not triers of fact. Credibility determinations are the province of the ALJ . . . Where, as here, the ALJ has made specific findings justifying a decision to disbelieve an allegation of excess pain, and those findings are supported by substantial evidence in the record, our role is not to second-guess that decision.

Fair v. Bowen, 885 F.2d 597, 604 (9th Cir. 1989).  In light of the foregoing, plaintiff has not shown that the ALJ erred in discounting plaintiff's credibility based in part upon the record's lack of supporting medical evidence that would bolster plaintiff's testimony regarding his symptoms.

   b. <u>Plaintiff's Medications</u>

A condition that can be controlled or corrected by medication is not disabling for purposes of determining eligibility for benefits under the Act.  See Warre v. Comm'r of Soc. Sec.

1  Admin., 439 F.3d 1001, 1006 (9th Cir. 2006).  The ALJ may consider plaintiff's responsiveness

2  to medication in assessing credibility.  E.g., Walker v. Astrue, No. 1:11–cv–0713 AWI–BAM,

3  2012 WL 2872818, at *10 (E.D. Cal. July 12, 2012) (unpublished) (as part of the credibility

4  analysis, the ALJ properly considered the fact that plaintiff had "responded well to medication"

5  and "appeared stable") (citing Warre, 439 F.3d at 1006; Tidwell v. Apfel, 161 F.3d 599, 601–02

6  (9th Cir. 1999) (in assessing claimant's credibility, ALJ did not err in considering that

7  medication "aided" plaintiff's symptoms ).)

8         Here, the ALJ stated that plaintiff's medications "have been relatively effective in

9  controlling [his] symptoms."  (AT 27.)  Plaintiff's medical records generally show that when

10  plaintiff was on a steady regimen of medication, his symptoms were under control, and his

11  symptoms would worsen only when he would run out.  (See, e.g., AT 268, 270, 589, 611-12,

12  644.)

13         In challenging the ALJ's credibility determination, plaintiff argues that being

14  "stable" and/or having symptoms "improve" while on medication does not necessarily mean that

15  plaintiff has the ability to work while taking such medication.  (Mot. for Summ. J. at 21.)

16  However, the ALJ did not conclude that plaintiff's symptoms being helped by medication meant

17  that plaintiff was necessarily able to work; instead, he noted evidence that plaintiff's medication

18  was "relatively effective" in combating his symptoms (e.g., AT 715-17), concluding that such

19  evidence undermined plaintiff's *testimony* that he suffered from anxiety symptoms that so

20  "severe" that such symptoms rendered him largely incapable of leaving the house.  (AT 27

21  ("[t]he evidence also does not support the claimant's assertion that he cannot leave the house

22  without severe and unmanageable anxiety . . ." [because] ". . . the medical records reveal that the

23  medications have been relatively effective in controlling the claimant's symptoms").)

24         The ALJ thus did not err in reasoning that evidence of plaintiff's effective use of

25  medication was somewhat at odds with plaintiff's reports of having severe and unmanageable

26  anxiety while taking such medication.  Moreover, while plaintiff's symptoms being somewhat

1  controlled or stabilized by medication would perhaps not itself be a sufficient reason for the

2  ALJ's adverse credibility determination in this case; however, the ALJ offered other valid

3  reasons for his determination.[11]

4           c.      Conservative Treatment

5           The ALJ did not err in considering plaintiff's relatively conservative treatment in

6  rendering his credibility determination.  See Tommasetti, 533 F.3d at 1039-40 (a favorable

7  "response to conservative treatment undermines [a claimant's] reports regarding the disabling

8  nature" of his or her impairments)); Parra v. Astrue, 481 F.3d 742, 751 (9th Cir. 2007) ("We

9  have previously indicated that evidence of conservative treatment is sufficient to discount a

10 claimant's testimony regarding severity of an impairment"); Fair, 885 F.2d at 604; Meanel, 172

11 F.3d at 1114 (ALJ did not err in rejecting claimant's testimony regarding symptoms of pain

12 because ALJ properly considered both the physician's failure to prescribe and the claimant's

13 failure to request serious medical treatment for supposedly excruciating pain); Johnson v.

14 Shalala, 60 F.3d 1428, 1434 (9th Cir. 1995) (ALJ properly found physician's conservative

15 treatment only to be suggestive of lower level of pain and functional limitation).

16          Here, the ALJ discredited plaintiff's testimony due in part to plaintiff's

17 longstanding, relatively conservative treatment in the forms of medication and weekly group

18 therapy.  (AT 27.)  Dr. Wong's treatment notes and the record in general corroborate this finding.

19 For example, Dr. Wong opined that plaintiff's impairment was not as severe as plaintiff reported

20 and noted that plaintiff's records did not suggest that plaintiff received aggressive treatment.

21 (AT 717.)  Other evidence of record confirms that plaintiff receives conservative treatment in the

22 form of medication and group therapy and has never been hospitalized as a result of his

23

24          [11]  In any event, even if this were not a legitimate reason to discount plaintiff's testimony,
   the error is harmless because the ALJ provided several other valid reasons for only partially
25 crediting plaintiff's testimony.  See Molina v. Astrue, 674 F.3d 1104, 1115 (9th Cir. 2012)
   (harmless error when ALJ provided one or more invalid reasons for disbelieving a claimant's
26 testimony, but also provided valid reasons that were supported by the record).

1    impairments.  (E.g., AT 565-620, 715-16.)

2          While plaintiff argues that the ALJ should have considered whether plaintiff's

3    mental illness itself kept him from obtaining more aggressive treatment (Mot. for Summ. J. at

4    20-21 (citing out-of-circuit authorities)), plaintiff identifies *no* medical opinion evidence in the

5    record to support the argument.  At most, plaintiff identifies evidence that group therapy is

6    plaintiff's only social contact and that other social contacts cause him anxiety (id. (citing portions

7    of the record)); but plaintiff identifies no medical opinion evidence indicating that his mental

8    condition itself actually impaired his ability to obtain different or more aggressive treatment.

9    Accordingly, because it is not based in the medical opinion evidence of record, this argument is

10   not well-taken.

11          d.    Daily Activities

12          "While a claimant need not vegetate in a dark room in order to be eligible for

13   benefits, the ALJ may discredit a claimant's testimony when the claimant reports participation in

14   everyday activities indicating capacities that are transferable to a work setting . . . Even where

15   those activities suggest some difficulty functioning, they may be grounds for discrediting the

16   claimant's testimony to the extent that they contradict claims of a totally debilitating

17   impairment."  Molina v. Astrue, 674 F.3d 1104, 1112-13 (9th Cir. 2012) (citations and quotation

18   marks omitted); see also Burch, 400 F.3d at 680 (ALJ properly considered claimant's ability to

19   care for her own needs, cook, clean, shop, interact with her nephew and boyfriend, and manage

20   her finances and those of her nephew in the credibility analysis); Morgan, 169 F.3d at 600 (ALJ's

21   determination regarding claimant's ability to "fix meals, do laundry, work in the yard, and

22   occasionally care for his friend's child" was a specific finding sufficient to discredit the

23   claimant's credibility).

24          Here, the ALJ found that,

25          [i]n activities of daily living, the claimant has a mild restriction.  The claimant
            reported that he watches movies and spends time on the computer.  [Citation.] The
26          claimant also revealed that he drives, occasionally shops for groceries, prepares

1    meals, and does laundry, cleaning, and yard work.

2    (AT 25 (citations to administrative transcript omitted).)   In rendering his adverse credibility

3    determination, the ALJ explained that "[t]he evidence also does not support the claimant's

4    assertion that he cannot leave the house without severe and unmanageable anxiety.  As discussed

5    above, the claimant goes to weekly treatment sessions, during which he watches movies and

6    interacts with other patients and occasionally leaves the house to go grocery shopping or go out

7    for coffee."  (AT 27.)  The ALJ did not err in reasoning that these daily activities tend to

8    undermine plaintiff's testimony regarding his limited abilities to leave the house and interact with

9    others.  See Burch, 400 F.3d at 680; Morgan, 169 F.3d at 600.

10          Given all of the foregoing, plaintiff has not shown that the ALJ erred in rejecting

11   plaintiff's subjective complaints.

12          2.    Plaintiff's Testimony Regarding Physical Impairments

13          Plaintiff also contends that the ALJ failed to properly address plaintiff's testimony

14   regarding limitations due to his physical impairments, namely, obesity exacerbating his "status-

15   post ankle fracture."  (Mot. for Summ. J. at 21-23.)  The ALJ considered these physical

16   impairments at step two of his assessment, finding that, whether singly or in combination, they

17   did "not cause more than a minimal limitation" in plaintiff's ability to perform work.  (AT 24.)

18   The ALJ also noted that the plaintiff testified that he had no physical impairments that prevent

19   him from working.  (AT 24; 42 ("Q: Do you have any physical problems?  A: None.").)

20          Plaintiff now argues that, during the hearing, he testified that his ankle caused him

21   physical difficulty and thus that the ALJ erred by not explicitly addressing that testimony.  (Mot.

22   for Summ. J. at 21-23.)  However, plaintiff's "ankle" argument is not actually supported by the

23   hearing testimony plaintiff provided.

24          During the hearing, plaintiff testified that he performed physical tasks including

25   laundry, cleaning, and yard work, but aside from testifying that his ankle sometimes "bothered"

26   him, he did not testify that the tasks were impossible or prohibitively difficult due to such

28

"bother."  (AT 44-45 (he "cut[s] the grass, edge[s]" for his yard and also for his girlfriend's

parents' yard next door every week, "usually Wednesday," with "no difficulty" except that "once

in awhile" his ankle "bothers" him, and also "will bother" him when he goes for walks, and that

he has "had a cast on it" since 1996).  The other evidence of record does not suggest that plaintiff

suffers significant ankle pain or limitations therefrom, let alone that he has worn a cast since

1996.  (E.g., AT 166-73 (plaintiff's written statement describes his weekly yard work, dog walks,

and other physical activities, but plaintiff does not mention his ankle or pain therefrom)).  In

short, plaintiff's hearing testimony that his ankle sometimes "bothers" him does not support the

argument that the ALJ erred by not explicitly discussing that testimony.  Indeed, plaintiff's

testimony that his ankle sometimes "bothers" him is consistent with the ALJ's finding that the

ankle caused no more than a "minimal limitation" upon plaintiff's ability to perform basic work

activities.[12]  (AT 24.)

       Moreover, even if the ALJ did err by failing to expressly reject plaintiff's

testimony that his ankle sometimes bothers him, any error is harmless because plaintiff failed to

identify *any* objective medical findings which could reasonably be expected to cause the

limitations plaintiff claims.  42 U.S.C. § 423 ("An individual's statement as to pain or other

symptoms shall not alone be conclusive evidence of disability as defined in this section; there

must be medical signs and findings, established by medically acceptable clinical or laboratory

diagnostic techniques, which show the existence of a medical impairment . . . ."); see also

Magallanes, 881 F.2d at 755 (rejecting a claimant's claim of physical impairment where "there

was no associated objective findings to support such a claim").  In short, plaintiff does not

identify any part of the medical record that supports the existence of plaintiff's ankle fracture or

any limitations resulting therefrom.  (Mot. for Summ. J. at 22 (citing AT 42-45).)  Accordingly,

plaintiff's argument is not well-taken.

---

[12]  Incidentally, as discussed further below, plaintiff's girlfriend has confirmed that
plaintiff has "no problem walking."  (AT 159.)

1          3.      Plaintiff's Girlfriend's Statement

2          The ALJ specifically "considered but granted little probative weight to

3  [plaintiff's] girlfriend's testimony." (AT 28.) The ALJ accorded such reduced weight because

4  "[h]er statements essentially mirror the subjective complaints of [plaintiff], which . . . are

5  inconsistent with the record as a whole." (Id.) Plaintiff contends that this conclusion error.

6  (Mot. for Summ. J. at 23.)

7          In assessing whether a claimant is disabled, an ALJ must consider lay witness

8  testimony regarding the claimant's ability to work. Bruce, 557 F.3d at 1115 (citing Stout v.

9  Comm'r, 454 F.3d 1050, 1053 (9th Cir. 2006), and 20 C.F.R. § 404.1513(d)(4), (e).)

10  "[C]ompetent lay witness testimony cannot be disregarded without comment" and "in order to

11  discount competent lay witness testimony, the ALJ must give reasons that are germane to each

12  witness." Molina, 674 F.3d at 1114-15 (internal quotation and citation omitted); Valentine, 574

13  F.3d at 694 (approving rejection of a third-party family member's testimony, which was similar

14  to the claimant's, for the same reasons given for rejection of the claimant's complaints). "[T]he

15  reasons 'germane to each witness' must be specific." Bruce, 557 F.3d at 1115 (citing Stout, 454

16  F.3d at 1054). "Inconsistency with medical evidence is one such reason." Bayliss, 427 F.3d at

17  1218. While an ALJ must "consider" lay testimony submitted upon a claimant's behalf, the ALJ

18  does not need to provide express reasons for rejecting testimony from *each* lay witness, and there

19  is a distinction between what an ALJ must consider and what the ALJ must explain in the

20  decision. Molina, 674 F.3d at 1114 (citing 20 C.F.R. §§ 404.1529(c)(3); 404.1545(a)(3); SSR

21  06–03p) (holding that an ALJ must "provide a reason" for disregarding lay testimony, either

22  individually or in the aggregate).

23          Here, as stated above, the ALJ did not err in discrediting plaintiff's testimony in

24  part because it was inconsistent with the record as a whole, and thus did not err in giving little

25  weight to plaintiff's girlfriend's similar testimony (AT 28) for that same reason. See Valentine,

26  574 F.3d 685, 694 (9th Cir. 2009) (upholding rejection of a third-party family member's

testimony, which was similar to the claimant's, for the same reasons given for rejection of the claimant's complaints); Bayliss, 427 F.3d at 1218 (citing Lewis v. Apfel, 236 F.3d 503, 511 (9th Cir. 2001) (stating that an ALJ may reject lay witness testimony based on its inconsistency with medical evidence in the record).  Plaintiff's girlfriend's statements largely mirror plaintiff's subjective reports regarding his limitations.  (See AT 154-61 (stating that plaintiff has extreme difficulties with concentration, following instructions, and making changes, but also stating that plaintiff "cares for" their dogs by feeding, walking, and bathing them, that she and plaintiff "watch movies, go for walks, do yard work" on evenings and weekends, that plaintiff prepares his own meals daily, "mows yards," does laundry and light housecleaning, drives himself to the store and to therapy sessions, goes out for coffee about once a week and has "no problems" getting along with "authority figures.")[13]

For the very same reasons described above with respect to plaintiff's subjective complaints, his girlfriend's statements regarding plaintiff's limitations are contradicted by the medical evidence in the record.  Plaintiff's girlfriend's statements about plaintiff's daily living activities—which include performing mowing and edging work in two yards every week, walking, feeding, and bathing the couple's two dogs, going out to eat and going out for coffee, and driving to group therapy and the store to do shopping, etc.—tend to undermine suggestions that plaintiff has such significant functional limitations that he is largely prevented from leaving his house.  (AT 27 (finding that these and plaintiff's other daily living activities undermined plaintiff's credibility regarding the severity of his symptoms).)  Accordingly, plaintiff has not shown that the ALJ erred in discounting the lay witness testimony in this case.

////

////

---

[13] Incidentally, plaintiff's girlfriend reported that plaintiff has "no problem walking" (AT 159), one of the few issues upon which plaintiff and the girlfriend offer divergent testimony. Given that plaintiff now argues that he suffers from physical limitations due to his ankle, plaintiff's girlfriend's testimony is evidence undermining that argument, as described above.

IV.     <u>CONCLUSION</u>

        Plaintiff has not shown the ALJ's decision to be unsupported by substantial evidence in the record or based on improper legal standards.  Accordingly, IT IS HEREBY ORDERED that:

        1.  Plaintiff's motion for summary judgment or remand (Dkt. No. 17) is DENIED.

        2.  The Commissioner's cross-motion for summary judgment (Dkt. No. 20) is GRANTED.

        3.  Judgment is entered for the Commissioner.

        4.  The Clerk of Court is directed to close this case.

        IT IS SO ORDERED.

DATED:  March 8, 2013


                                        _____
                                        KENDALL J. NEWMAN
                                        UNITED STATES MAGISTRATE JUDGE